## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RX.COM INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-2645 |
| | § | |
| HARTFORD FIRE INSURANCE CO., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff, Rx.com, sued its insurer, the Hartford Fire Insurance Co., for breach of contract and violations of Articles 21.21 and 21.55 of the Texas Insurance Code.  Rx.com alleges that Hartford breached its commercial general liability insurance policy when it refused to pay all the fees Rx.com was billed by the law firm it chose to defend it in an underlying suit.  Rx.com insisted on retaining that law firm for approximately a year after Hartford agreed to provide a defense, declining Hartford's choice of counsel, on the ground that Hartford had maintained a reservation of rights as to coverage.  Hartford's chosen counsel ultimately assumed Rx.com's defense and shortly thereafter the case was settled with no payment by Rx.com or the individual defendants.

In a previous Memorandum and Order, this court denied Hartford's motion to dismiss the Article 21.55 claim.  (Docket Entry No. 26).  Rx.com has now moved for summary judgment that as a matter of law, Hartford breached the insurance policy by refusing to pay

all the invoiced amounts and that those amounts were reasonable and necessary.  (Docket Entry No. 29).  Hartford has responded, asserting that a number of fact issues preclude summary judgment.  Those fact issues include whether Rx.com, which has changed its ownership and organization, is the same entity that was billed for the fees; whether Rx.com paid or is legally obligated to pay most of the invoiced fees; whether those invoiced fees were reasonable and necessary; and whether those invoiced fees include amounts for services outside the policy's coverage.  Hartford also crossmoved for summary judgment on the ground that limitations bars the Article 21.55 claim. (Docket Entry No. 41).  Rx.com has replied, asserting that whether it paid or remains liable to pay the invoiced legal fees is irrelevant, as long as when they were invoiced, Rx.com was "legally obligated to pay."  Rx.com also asserts that whether Hartford found the invoiced legal fees to be reasonable or necessary is irrelevant because the policy provided no audit right to the insurer.  (Docket Entry No. 49, 58).  Hartford has surreplied, asserting that the summary judgment evidence shows that Rx.com specifically agreed to allow Hartford to audit the invoiced legal fees and that after the audit, Hartford paid reasonable and necessary fees for services within the policy's coverage.  (Docket Entry No. 53, 59).[1]

Both parties have filed objections to the summary judgment evidence and responses to the objections.  (Docket Entry Nos. 40, 48, 57).  Hartford has moved for leave to file an

---

[1]    Hartford's motion for leave to file a surreply, (Docket Entry No. 54), is granted.  Hartford's motion for a continuance of the summary judgment proceedings, (Docket Entry No. 38), is denied as moot. Hartford's motion for leave to file a supplemental response and evidence to Rx.com's motion for summary judgment, (Docket Entry No. 61), is granted.

amended answer, (Docket Entry No. 42), to which Rx.com has objected, (Docket Entry No. 44), and Hartford has replied, (Docket Entry No. 55).  Hartford has filed a motion for issuance of letters rogatory, (Docket Entry Nos. 64, 65), to which Rx.com has objected, (Docket Entry No. 67), and Hartford has replied, (Docket Entry No. 68).  Rx.com has filed a motion for a protective order and a motion to quash notice of a deposition, (Docket Entry No. 69), and a motion for a status conference and a stay, (Docket Entry No. 70), which Hartford has opposed and responded by filing a motion for a protective order and a motion to compel, (Docket Entry No. 71, 72).

After reviewing the motions and responses, the record, and the applicable law, this court denies the motions for summary judgment, grants in part and denies in part the motions to strike, grants Hartford's motion for leave to file an amended answer, denies Rx.com's motion to stay discovery as moot, and grants Rx.com's motion for a status conference.  This court will hold a status conference on **April 14, 2005**, at 4:00 p.m. to address the outstanding discovery disputes and to enter a scheduling order.

The reasons for these decisions are explained below.

I.      **Background**

Rx.com is a Delaware corporation with its principal place of business in Texas. Hartford is a Connecticut corporation with its principal place of business in that state. Rx.com obtained a comprehensive general liability (CGL) policy from Hartford with effective dates between October 28, 1999 and October 28, 2000.  Joe Rosson, Rx.com's founder, and parties related to him sued Rx.com and certain of its officers, directors, and

investors in Texas state court in May 2000, alleging that the defendants had forced Rosson out of the company.  Rx.com provided Hartford timely notice of the suit.  Hartford promptly acknowledged that it received the notice of Rx.com's loss, but refused to indemnify or defend Rx.com because the petition did not allege covered losses.  Rx.com retained the law firm of Brobeck, Phleger & Harrison—which no longer exists—to defend it in the underlying suit.  After the petition in the underlying suit was amended to include allegations for defamation and privacy right violations—within the policy's coverage for "personal and advertising injury," Hartford agreed to defend Rx.com under a reservation of rights agreement.  Hartford told Rx.com that it intended to assign the defense to another law firm, Chamberlain, McHaney, which had significantly lower billing rates than Brobeck.  Rx.com refused Hartford's proffered counsel and insisted that it would continue to be represented by Brobeck.  Rx.com asserted that Hartford's reservation of rights created "a conflict of interest entitling Rx.com to select its own counsel at the expense of and to be paid by the carrier." Hartford denied that the basis of its reservation of rights created any conflict that would allow Rx.com to choose its own counsel and require Hartford to pay whatever that counsel billed.

Hartford and Rx.com continued to discuss the counsel issue.  Brobeck lawyers worked on the suit and invoiced Rx.com for the time and expenses.  From June 2000 to June 2001, Brobeck sent Rx.com, and Rx.com sent Hartford, invoices for legal fees and expenses.  By April 2001, Brobeck had billed over $350,000.  On May 1, 2001, after discussions between David Clement, a Hartford claim specialist, and Rx.com's general counsel, Christopher

Meakin, Hartford offered to audit the past Brobeck bills and pay a "reasonable" rate for the work performed and tendered $100,000 as "partial payment." Hartford asserts that it agreed to have Brobeck remain on the case until certain discovery occurred and a summary judgment motion was filed. Hartford asserts that Rx.com agreed to this arrangement. On July 9, 2001, Brobeck withdrew and Chamberlain, McHaney filed a notice of appearance. The underlying suit was ultimately settled, with no payment by Rx.com or the individual defendants.

In this suit, Rx.com claims that Hartford is liable for the amounts Brobeck invoiced for the legal services performed to defend Rx.com in the underlying suit from June 2000 to June 2001, totaling $603,919.97. Rx.com asserts that it paid Brobeck $289,463.50 directly. After motions and briefs were exchanged, Rx.com agrees that Hartford paid $191,639.00 of the fees Brobeck invoiced. Rx.com moves for summary judgment that Hartford is liable for the remaining invoiced amounts. Rx.com has submitted affidavits from lawyers at Brobeck and others opining that the amounts billed were both reasonable and necessary. Hartford challenges the affidavits and responds that Rx.com is seeking a "windfall" by asking to be paid for amounts it was billed but did not pay and is not liable to pay. Hartford also argues that the Brobeck invoices include amounts for services not covered by the policy, including defense costs incurred before the duty to defend was triggered, costs for prosecuting counterclaims, and costs for representing individual defendants and that the invoices include unreasonable amounts. Hartford denies that it was obligated to pay for Brobeck's services after Hartford agreed to provide Rx.com a defense and assigned counsel of its own choosing.

Hartford also challenges Rx.com's ability to insist on payment given the change in the company's ownership and challenges Rx.com's ability to assert a claim under Article 21.55 given the delay in filing the suit.

## II.    The Summary Judgment Record

### A.    The Insurance Policy

The "coverage" provision of the Hartford CGL policy reads:

> We will pay up to the applicable *Legal Liability – Building Limit of Insurance* stated in the Declarations for those sums that you become legally obligated to pay as damages because of direct physical loss or damage, including loss of use, to Covered Property caused by accident and arising out of any Covered Cause of Loss.  We will have the right and duty to defend any "Suit" seeking those damages.  However, we have no duty to defend you against a "Suit" seeking damages for direct physical loss or damage to which this insurance does not apply.  We may investigate and settle any claim or "Suit" at our discretion.  But our right and duty to defend ends when we have used up the Limit of Insurance in the payments of judgments or settlements.

(Docket Entry No. 29, Ex. 1 at HART 46).

The "Insuring Agreement" under "Coverage A. Bodily Injury and Property Damage Liability," reads:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(*Id.* at HART 67).

A separate provision states:

6

This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in "coverage territory"; and

    (2)    The "bodily injury" or "property damage" occurs during the policy period.

(*Id.*).  The policy includes the following description of damages:

Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'

(*Id.*).

In the "Definitions" section, the policy defines "advertising injury":

"Advertising injury" means injury arising out of one or more of the following offenses:

    a.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b.    Oral written publication of material that violates a person's right of privacy;

    c.    Misappropriation of advertising ideas or style of doing business; or

    d.    Infringement of copyright, title or slogan.

(*Id.* at HART 76).  "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death, resulting from any of these at any time."  (*Id.*).  The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*Id.* at HART 77).

A separate policy provision includes more specific coverage for personal injury":

1.    Insuring Agreement

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . . .

    b.    This insurance applies to:

        (1)    "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; or

        (2)    "Advertising injury" caused by an offense, committed in the course of advertising your goods, products or services; but only if the offense causing the "personal injury" or the "advertising injury" was committed in the "coverage territory" during the policy period.

(*Id.* at HART 83).

The policy's "Exclusions" section includes the following relevant provisions:

a.    "Personal injury" or "advertising injury":

    (1)    Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity

    (2)    Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

    (3)    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4)     For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

****

b.     "Advertising injury" arising out of:

(1)     Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2)     The failure of goods, products or services to conform with advertised quality or performance;

(3)     The wrong description of the price of goods, products or services; or

(4)     An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting. . . .

(*Id.* at HART 70–71).

## B.     The Parties' Submissions

Rx.com has submitted correspondence with Hartford relating to the insurance coverage issues as well as correspondence sent to state insurance agencies. (Docket Entry No. 29, Exs. 2–8). Rx.com has also submitted an affidavit from Stephen M. Zager, the lead Brobeck partner working on the underlying lawsuit defense; the billing records from the underlying case; affidavits from attorneys Chris Reynolds and Patrick L. Hughes supporting Rx.com's claim that the fees charged in the underlying lawsuit were fair and reasonable; and an affidavit from attorney James Cornell supporting Rx.com's claim for attorney's fees in this case. (Docket Entry No. 29, Exs. 9-A–9-F). Rx.com has also submitted affidavits executed by Kenneth Rusinko and Courtney R. Bragg that calculate the amount of interest

Rx.com claims.  (Docket Entry No. 29, Ex. 9-F; Docket Entry No. 49, unnumbered exhibit).

With its reply brief, Rx.com submitted copies of cancelled checks it sent Brobeck in the

amounts of $87,057.43, $26,291.18, $28,573.28, 37,594.68, $26,412.70, $50,926.36, and

$20,057.10.   (Docket Entry No. 49, Ex. J).   Rx.com also submitted additional email

correspondence and some of Hartford's internal records about the case.  (Docket Entry No.

49, Ex. G).

     In Hartford's reply to Rx.com's motion for summary judgment, it submitted the

original petition from the underlying lawsuit (Docket Entry No. 41, Ex. 2), the first amended

petition from the underlying lawsuit (Docket Entry No. 41, Ex. 7), the seventh amended

petition from the underlying lawsuit (Docket Entry No. 31, Ex. 26), and much of the same

(or related) correspondence and records demonstrating receipt of correspondence submitted

by Rx.com.   Hartford also submitted a lengthy audit of Rx.com's legal bills from the

underlying lawsuit, which concluded that much of the fees and expenses Brobeck charged

was unreasonable, unnecessary, or inflated because too much time was spent, by too many

people, doing work that was duplicative or unnecessary, at rates that were too high, for the

demands of the case.  (Docket Entry No. 41, Ex. 23).  Hartford also submitted cancelled

checks it paid Brobeck directly for defending Rx.com  in the underlying suit, in the amounts

of $100,000 and $91,639.61.  (Docket Entry No. 41, Tab C).

### C.       Objections to the Parties' Submissions

Hartford filed numerous objections to Rx.com's summary judgment evidence. (Docket Entry No. 40).  Hartford moves to strike Chris Reynolds's affidavit on the ground that it is expert testimony but Rx.com did not list Reynolds as providing such testimony under Rule 26 and did not produce an expert report.  (Docket Entry No. 40 at 1).  Hartford similarly moves to strike the affidavit of Steven Zager under Rule 26.  (Docket Entry No. 40 at 3).  Hartford also moves to strike the affidavit of Kenneth Rusinko—a legal assistant who performed an interest calculation—on Rule 26 and hearsay grounds.  (Docket Entry No. 40 at 11).

In its reply, Rx.com argues that although it moved for summary judgment on the ground that Brobeck's bills were both reasonable and necessary, Hartford had no right under the policy to question the fee amounts.  Rx.com also argues that a court does not need expert testimony to determine whether attorneys' fees are reasonable or necessary.  (Docket Entry No. 49 at 21).  Rx.com asserts that it provided these affidavits only in the event this court needed such evidence, (Docket Entry No. 48 at 1), and has submitted further Rule 26 disclosures and reports from these witnesses, (Docket Entry Nos. 45, 47), as well as more detailed reports and calculations from other witnesses, (Docket Entry Nos. 50, 51).

The motion to strike the affidavits of Zager and Reynolds is denied.  First, the affidavits provide a predicate for the billing records and related correspondence.  Second, the affidavits express opinions on the reasonableness and necessity of the amounts Brobeck billed Rx.com for services performed in the underlying litigation.  Rx.com contends that

Hartford must pay attorney's fees incurred in defending the underlying suit as damages for Hartford's breach of the duty to defend. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 559 (5th Cir. 2004); *Am. Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 490 (5th Cir. 2004). The attorney's fees sought to be recovered as damages must be reasonable and necessary. *See Am. Home Assur. Co.*, 378 F.3d at 489. To show the reasonableness and necessity of attorney's fees incurred, Texas courts have generally held that a party seeking such fees must offer the testimony of a witness who has been designated as an expert, *see E.F. Hutton & Co. v. Youngblood*, 741 S.W.2d 363, 364 (Tex. 1987); *Lesikar v. Rappeport*, 33 S.W.3d 282, 307 (Tex. App. – Texarkana 2000, rev. denied), or at the very least, some testimony by the claimant's attorney that the fees being sought as damages are reasonable. *Gulf Paving Co. v. Lofstedt*, 188 S.W.2d 155, 161 (Tex. 1945); *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 149 (Tex. App. – Houston [1st Dist.] 1986, no writ). Texas courts have held that a court may take judicial notice of the reasonableness of attorney's fees based on the testimony given. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990).

Rx.com has now designated the witnesses under Rule 26, mooting the principal basis for the objections to the affidavits. Although the motion to strike these affidavits is denied, the evidence is premature and not dispositive of the summary judgment issues. The threshold issues that must first be decided include whether Rx.com may recover for amounts invoiced but not paid; whether Hartford and Rx.com agreed to allow Hartford to audit the invoices and only pay the "reasonable" amounts; whether Hartford and Rx.com reached an agreement as

to the amount Hartford owed, which Hartford paid and Rx.com accepted; and whether Hartford had a right under the policy to insist that Rx.com use a law firm Hartford selected to provide a defense at Hartford's expense.  The motion to strike the affidavits of Reynolds and Zager at this stage of the litigation is denied, but the affidavits are of limited relevance to the issues addressed in this opinion and Hartford will have ample opportunity to conduct discovery into the matters raised in the affidavits and related Rule 26 disclosures before they do become important to the case.

The motion to strike the affidavit of Rusinko is granted because an expert is not necessary at any stage to perform the arithmetic calculations he performs.  *See* FED. R. EVID. 702 (requiring an expert witness to be helpful to the trier of fact).

Hartford also moves to strike the affidavits of Patrick Hughes and James Cornell on Rule 26 grounds.  (Docket Entry No. 40 at 9).  Rx.com replies that these affidavits are relevant and competent to show the amount of attorney's fees Rx.com spent in the present case against Hartford.  (Docket Entry No. 48 at 5).  Rx.com cites *Wright v. Blythe-Nelson,* No. CIVA399CV2522D, 2001 WL 804529 (N.D. Tex. July 10, 2001), in which the court stated, "In most instances, . . . Rule 54(d) provides that attorney's fees are decided by the court on motion filed after the entry of judgment.  Attorneys who represent parties against whom such fees are sought are not surprised by expert testimony because they can usually expect that opposing counsel will attempt to prove his attorney's fees and because they themselves are experts on the subject." *Id.* at *6.  As the case cited by Rx.com (and quoted here) states, however, the appropriate time to introduce this testimony is *after the entry of*

*judgment,* not at this stage of the litigation.  *Id.*  The motion to strike the evidence is granted because this evidence is premature and not relevant to the summary judgment proceedings.

Hartford moves to strike the summary chart attached to Zager's affidavit on the ground that Rx.com has not produced the underlying documents, specifically the checks and some of the check numbers that Rx.com claims to have used to pay Brobeck a total of $289,463.50 of the $603,919.97 invoiced.  (Docket Entry No. 40 at 5).  Hartford objects to this evidence as hearsay and, alternatively, as incompetent summary evidence under FED. R. EVID. 801 and 802.  Rx.com responds that the chart is admissible under FED. R. EVID. 1006 as a summary of voluminous writing.  (Docket Entry No. 48 at 3).  Rule 1006 requires that a summary is admissible only if its proponent makes the voluminous evidence available for examination or copying, or both.  Hartford denies that Rx.com made the underlying evidence available for inspection or copying; Rx.com asserts that it did.  The chart is admissible conditioned on Rx.com's ability to show that it has produced the underlying  documents to Hartford.  The court will address this discovery issue with the parties at the status conference.

Hartford moves to strike two letters Rx.com sent to the Texas and Connecticut state insurance agencies complaining about Hartford's refusal to pay Rx.com's defense costs.  (Docket Entry No. 40 at 6).  These documents are irrelevant to this case, FED. R. EVID. 401, and are inadmissible hearsay that do not fall within the business record or other exception, FED. R. EVID. 803 and (6).  Hartford's motion to strike these letters is granted.

Hartford moves to strike Joe Rosson's affidavit as lacking personal knowledge, in violation of FED. R. EVID. 602 and FED. R. CIV. P. 56(e); as including conclusory statements

and improper legal conclusions; and as including calculations that are hearsay and inadequately supported by the proffered documentation.  (Docket Entry No. 40 at 7).  Rx.com responds that Rusinko's affidavit also supports the calculations Rosson includes.  (Docket Entry No. 48 at 4).  Rosson's affidavit, like Rusinko's, primarily includes arithmetic calculations that, at this point in the litigation, are premature and irrelevant to the summary judgment issues.  The motion to strike is granted.

Rx.com moves to strike parts of Clement's affidavit and attached documents.  (Docket Entry No. 48 at 7).  Rx.com moves to strike: Clement's statement about Hartford's "understanding" of its legal rights under the policy as an improper legal conclusion; the audit of Brobeck's invoiced fees for defending Rx.com in the underlying case as hearsay, improper use of unauthenticated records, a violation of Rule 26, and irrelevant because Hartford had no right to audit the records under the policy; a newspaper article about Rx.com as "unproven, not authenticated, and . . . irrelevant," (Docket Entry No. 48 at 8); and one of Hartford's exhibits as not authenticated, irrelevant, or an improper summary because the underlying documents have not been produced.  To the extent Clement—or other witnesses—offer legal conclusions, this court will not rely on such statements.  The remaining challenges to Clement's affidavit fail.  Rx.com's authentication objections lack legal or factual support and are overruled.  The Rule 26 objection to the audit report also fails.  The audit report is relevant to Hartford's claim that the Brobeck invoices were unreasonable, to Hartford's argument that Rx.com agreed to allow Hartford to audit those invoices and pay only reasonable and covered amounts, and to Hartford's accord and

satisfaction defense.  The audit is not hearsay because it is evidence of the analysis the audit company performed and the conclusions it conveyed to Hartford, rather than as evidence that the contents of the report were true.  Rx.com's objections to the exhibits as a summary not accompanied by production of the underlying voluminous documents are overruled without prejudice, conditioned on Hartford's showing that it has produced the underlying documents. In short, the motion to strike Clement's affidavit and attached documents is denied except as to legal conclusions stated in the affidavit.

Hartford also moves to strike Rx.com's evidence submitted with its reply to Hartford's response to the motion for summary judgment.  (Docket Entry No. 53 at 1).  By submitting the additional evidence, Rx.com remedied some of the evidentiary problems Hartford raised and helped clarify the record evidence.  Hartford, which submitted a surreply and a supplemental response, both of which this court has accepted and considered, is not prejudiced.  The motion to strike the additional evidence is denied.

## III.    The Summary Judgment Motions

### A.    Rule 56

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  Under FED. R. CIV. P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).

If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate the evidence in the record insufficiently supports an essential element or claim. *Celotex*, 477 U.S. at 330. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir.2003) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 305 (5th Cir.2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.,* 333 F.3d 566, 568 (5th Cir.2003).

In deciding a summary judgment motion, the court draws all reasonable inferences in

the light most favorable to the nonmoving party. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

### B.    Hartford's Challenge to Rx.com's Standing

As a threshold matter, Hartford challenges Rx.com's ability to bring this lawsuit, claiming that the entity that purchased the policy and paid the premiums was sold and reconstituted as a new entity owned by Rosson, the primary plaintiff in the underlying case, whose suit against the former Rx.com entity generated the legal bills at issue in this case. (Docket Entry No. 41 at 17). Hartford argues that Rx.com was "destroyed" by Alliance Unichem, which sold Rx.com's assets and did not carve-out the policy or Rx.com's claims against Hartford. In support, Hartford cites the Seventh Amended Petition in the underlying lawsuit, which alleged that Alliance Unichem was foreclosing on Rx.com's assets to satisfy adverse judgments rendered in other litigation. (*Id.*, Ex. 26 at 47). Hartford also notes that Rx.com lost its corporate charter in 2002 as further support for the claim that Rx.com has been disbanded and reconstituted so as to destroy its standing to sue on this insurance policy.

Standing is a jurisdictional requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally

protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of . . . .  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Walker v. City of Mesquite*, 169 F.3d 973, 978–79 (5th Cir. 1999) (quoting *Lujan*, 504 U.S. at 560-561) (footnote, citations, and internal quotation marks omitted)).  The party invoking the court's jurisdiction bears the burden of demonstrating standing.  *Int'l Ass'n of Machinists and Aerospace Workers Local Lodge 2121 AFL-CIO v. Goodrich Corp.*, 410 F.3d 204, 211 (5th Cir. 2005) (citing *Grant v. Gilbert*, 324 F.3d 383, 387 (5th Cir. 2003) (additional citations omitted).

Rx.com introduced a sales agreement through which Alliance Unichem, plc, one of Rx.com's secured creditors, sold certain Rx.com assets to RxMailstore, LLC.  (Docket Entry No. 49, Ex. L).  Rx.com argues that the sales agreement shows that it did not sell its cause of action against Hartford under the insurance policy.  Hartford has not pointed to other evidence in the present record to support its argument that the assets Rx.com sold included its claim against Hartford.  This court does, however, grant Hartford's alternative request for discovery into this issue.  As part of this discovery, Rx.com must produce a corporate representative for a deposition under Rule 30(b)(6) on this issue. Based on the present record, this court denies Hartford's motion for summary judgment that Rx.com lacks standing to sue, without prejudice to Hartford's reassertion of the motion after taking the discovery on the issue that this court has allowed.

**C.**   **Rx.com's Motion for Summary Judgment as to Hartford's Refusal to Defend Based on the Original Petition in the Underlying Suit**

Rx.com moves for summary judgment that Hartford's refusal to defend at the outset of the underlying lawsuit was a breach of the insurance contract and the Texas Insurance Code.  Such a breach would require Hartford to pay the attorneys' fees Rx.com incurred before the amended petition was filed and Hartford agreed to provide a defense subject to a reservation of rights.  (Docket Entry No. 49 at 13–14).  Rx.com's argument is without merit.

Texas employs the "eight corners" or "complaint allegation" rule to determine whether an insurer has a duty to defend.  *Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 551 (5th Cir. 2000).  The eight-corners rule requires the finder of fact to compare the allegations in the underlying suit—the suit against the insured—with the provisions of the insurance policy to determine if the allegations fit within the policy coverage.  *Id.*  The Original Petition in the underlying lawsuit was filed on May 15, 2000 by Joe S. Rosson, Elizabeth G. Rosson, Ghent W. Rosson, Todd A. Rosson, and Trevor J. Rosson—Rx.com's founders—against Rx.com, Inc., Alliance Unichem PLC, Christopher H. Meakin, Roger R. Phillips, Jr., Richard J. Mills, James E. Fowler, Robert D. Coopman, Lawrence G. Hruska, and Cathy Seward Hruska—individuals and entities who were officers and directors of Rx.com and who had invested in the company and bought out the founders. (Docket Entry No. 41, Ex. 2).  In the Original Petition, the underlying plaintiffs alleged that the underlying defendants "engaged in a civil conspiracy to force the Rossons' resignations under duress and to gain operational control of Rx.com."  (*Id.* at ¶ 21).  The underlying

plaintiffs alleged breach of fiduciary duty, shareholder oppression, conspiracy, actual and/or constructive fraud, fraudulent inducement, conversion, intentional infliction of emotional distress, and breach of contract.

Rx.com has not provided legal or factual support for its claim that Hartford owed it a duty of defense based on the allegations in the Original Petition.[2]  The Original Petition does not allege bodily injury, advertising injury, or property damage as defined by the policy. When Rx.com sent the Original Petition to Hartford, Hartford immediately denied coverage and explained the reasons.  (Docket Entry No. 41, Ex. 5).  When the underlying plaintiffs amended the Original Petition to include defamation and privacy right violation claims that did implicate the policy, Rx.com's counsel sent the amended pleading to Hartford with a letter asking that Hartford "re-evaluate your coverage position in light of the revised allegations." (Docket Entry No. 41, Ex. 6 at RX 387).  Hartford promptly agreed to provide a defense subject to a reservation of rights.  Rx.com has not pointed to language in the Original Petition and policy that support its assertion that Hartford owed a defense before the petition was amended and Hartford agreed to defend.

Rx.com's motion for summary judgment that Hartford is responsible for the $88,951.55 in attorney's fees incurred to defend the underlying suit before the complaint was

---

[2]       In its reply brief, Rx.com claims that Hartford has admitted liability for these attorney's fees. (Docket Entry No. 49 at 12–13).  The internal computer entries made by Hartford staff indicate what Hartford readily admits: that the underlying plaintiffs' first amended petition triggered Hartford's duty to defend.  This issue is not disputed.

amended, triggering Hartford's duty to defend, is denied.[3]

### D.   Rx.com's Motion for Summary Judgment as to Hartford's Refusal to Pay the Attorneys' Fees Invoiced After the Amended Petition Was Filed

When the underlying plaintiffs amended their petition, Rx.com again asked Hartford for a defense and indemnity.  After reviewing the amended petition, Hartford agreed to defend the lawsuit subject to a reservation of rights, but required Rx.com to accept Hartford's choice of counsel.  Rx.com declined, citing a conflict, and asked Hartford to pay Brobeck. Rx.com has moved for summary judgment on its claim that Hartford breached the insurance contract and violated Article 21.55 of the Texas Insurance Code in insisting on counsel of its choice and refusing to pay all the fees invoiced by the counsel Rx.com chose.  Hartford opposes the motion on four grounds: (1) Rx.com has not established that the reservation of rights presented a conflict that would allow Rx.com to select its own counsel yet require Hartford to reimburse the defense costs; (2) Hartford has introduced facts to support its defense of accord and satisfaction based on the agreement with Rx.com's general counsel to allow Hartford to audit Brobeck's invoices and only pay the amounts that were reasonable and for covered services; (3) Rx.com has failed to establish the reasonableness and necessity of Brobeck's invoiced fees; and (4) fact issues remain as to the amount of damages Rx.com is owed, including the amount of the invoiced fees that Rx.com either paid or remains legally obligated to pay.  Each argument is addressed in turn.

Rx.com repeatedly argues that the policy language "becomes legally obligated to pay"

---

[3]  Hartford has not filed a cross-motion for summary judgment on this issue.

requires Hartford to pay all legal fees that Brobeck billed Rx.com, even if Rx.com did not

pay those fees and is no longer liable to do so because someone else paid the fees, Brobeck

wrote them off, or for some other reason.  The "Insuring Agreement" states that Hartford

"will pay those sums that the insured becomes legally obligated to pay as damages." (Docket

Entry No. 29, Ex. 1 at HART 67).  Similarly, the separate coverage for "personal injury" and

"advertising injury" states that Hartford "will pay those sums that the insured becomes

legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to

which this insurance applies.  We have the right and duty to defend any 'suit' seeking those

damages."  (*Id.* at HART 83).  The second sentence discusses the duty to defend; the "legally

obligated to pay" phrase is linked to the phrase "to pay as damages."  The policy language

unambiguously uses the "legally obligated to pay" language with reference to the duty to

indemnity, not the duty to defend.  An insurer's duty to defend and its duty to indemnify are

separate.  *See, e.g.*, *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519,

524 (5th Cir. 2006) ("The duties to defend and to indemnify are distinct and separate . . .")

(citing *Farmers Tex. Co. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997)).  The

"legally obligated to pay" language does not support Rx.com's claim for unlimited defense

costs.

Texas courts have held that attorney's fees incurred involving litigation with a third

party are recoverable as actual damages for breach of the duty to defend.  *See e.g., Am. Home

Assur. Co.*, 378 F.3d at 490.  Rx.com incorrectly asserts that under Texas law, an insured

may choose its own counsel at the insurer's expense any time the insurer agrees to defend

subject to a reservation of rights.  Texas law is narrower.  An insurer's "right to defend" a lawsuit encompasses "the authority to select the attorney who will defend that claim and to make other decisions that would normally be vested in the insured as the named party in the case."  *N. County Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 688 (Tex. 2004).  Not every reservation of rights creates a conflict of interest allowing an insured to select independent counsel.  Rather, the existence of a conflict depends on the nature of the coverage issue as it relates to the underlying case.  If the insurance policy (like the policy in this case) gives the insurer the right to control the defense of a case the insurer is defending on the insured's behalf, the insured cannot choose independent counsel and require the insurer to reimburse the expenses unless "the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends."  *Davalos*, 140 S.W.3d at 689.  If the issue on which coverage turns is independent of the issues in the underlying case, counsel selected by the insured is not required.  A conflict of interest does not arise unless the outcome of the coverage issue can be controlled by counsel retained by the insurer for the defense of the underlying claim.  *Davalos*, 140 S.W.3d at 689.[4]  This rule allows insurers to control costs while permitting insureds to protect themselves from an insurer-hired attorney who may be

_____

[4]        In *Davalos*, the automobile liability insurer's decision to condition a defense on the insured's withdrawal of motion to transfer venue to a county where the insured had filed suit arising out of same accident did not create a sufficient conflict of interest for the insurer to lose the right to conduct the defense.  The insurer tendered an unqualified defense and did not breach its duty to defend by offering to defend the insured in the county where the accident had occurred.  The disagreement over venue was insufficient to take the contractual right to conduct the defense away from the insurer and did not allow the insured to reject the tender and conduct his own defense and hold the insurer liable for the outcome.  140 S.W.3d at 689–90.

tempted to develop facts or legal strategy that could ultimately support the insurer's position that the underlying lawsuit fits within a policy exclusion.  *See, e.g.*, *Hous. Auth. of the City of Dallas, Tex. v. Northland Ins. Co.*, 333 F. Supp. 2d 595, 601 (N.D. Tex. 2004).

The First Amended Petition in the underlying lawsuit asserted the following claims: breach of fiduciary duty; shareholder oppression; conspiracy; actual and/or constructive fraud; fraudulent inducement; conversion; intentional infliction of emotional distress; breach of contract; negligence; and negligent misrepresentation.  (Docket Entry No. 41, Ex. 7).  The First Amended Petition included allegations that, "[J]ointly and severally, Defendants caused injury to each and every Plaintiff through oral and/or written publication of material in their advertisement that slandered and/or libeled the Plaintiffs and disparaged their goods, products and/or services and violated Plaintiffs' right to privacy."  (*Id.* at ¶ 14).  The underlying plaintiffs also alleged that "not directly or indirectly related to the Plaintiffs' employment and termination, Defendants negligently and/or intentionally injured the Plaintiffs through discrimination and humiliation that resulted in injury to the feelings and reputation of Plaintiffs."  (*Id.*).  The underlying plaintiffs supported the intentional infliction of emotional distress claim with allegations that "Defendants . . . made false and misleading statements about the Rossons, including threats of actions against the Plaintiffs, which they knew to be false and in order to further their own dark purposes and business.  The Defendants also intentionally made derogatory false statements to third parties about the Rossons in order to further their purposes and business."  (*Id.* at ¶ 40).

In its reservation of rights letter, Hartford explained that the underlying lawsuit "is now attempting to seek damages for 'advertising injury' or 'personal injury' as those terms are defined in Hartford's policy," triggering Hartford's duty to defend.  (Docket Entry No. 41, Ex. 8 at HART 769).  Hartford noted the following policy limitations:

> The Hartford's policy provides coverage for "bodily injury" or "property damage" only where such injury or damage was caused by an "occurrence."
>
> There are no facts contained within the amended petition indicating that this loss was due to an "occurrence" as defined by the policy.
>
> The Amended Petition still does not seek damages for "property damage" or "bodily injury" as those terms are defined by the policy.

(*Id.*).  The reservation of rights letter did not state that the allegations that Rx.com caused "advertising injury" or "personal injury" fell within a policy exclusion.  In the letter, Hartford included part of the policy definition of "personal injury" and emphasized certain limiting words:

> Discrimination or humiliation that results in injury to the feelings or reputation of a natural person, **but only if** such discrimination or humiliation is:  (1) Not done intentionally or by the direction of: (a) The Insured; (b) Any 'executive officer,' director, partner or member of the insured; and (2) Not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any insured.

*Id.* at HART 774–75 (emphasis in original)).  Hartford also included a list of exclusions to "personal injury" and "advertising injury" coverage in the reservation of rights letter, without stating that the underlying lawsuit's allegations were subject to these policy exclusions.  *Id.*

at HART 775–76.  Hartford included a blanket reservation of all rights under the policy:

> The Hartford is specifically reserving its rights under the terms, conditions and exclusions of this policy, and by providing a defense does not waive any grounds, exclusions or defenses, either now or in the future, which would provide a basis of withdrawal or denial of defense or indemnity.  Thus, representation of You by the attorney appointed by The Hartford shall not be construed as a waiver of the lack of coverage under the policy for the Amended Petition and shall not be construed as an estoppel against The Hartford or against its assertion that no coverage exists for the Lawsuit claims asserted therein at a later time.

(*Id.* at HART 777).

Rx.com has not shown that, as a matter of law, the facts to be decided in the underlying lawsuit are the same facts that would defeat coverage by triggering a policy exclusion.  Hartford's reservation of rights letter did not invoke a coverage exclusion that would be established by proof of the same facts to be decided in the underlying lawsuit.  *See Northland Ins. Co.*, 333 F. Supp. 2d at 602 ("[B]ecause the liability facts and coverage facts were the same and because a potential conflict of interest was created by the issuance of the reservation of rights letter, a disqualifying conflict existed; therefore Northland could not conduct the defense of the [underlying] lawsuit.").  On the present record, Rx.com has not shown a conflict of interest that, as a matter of law, made Hartford's resistance to paying Brobeck's fees to defend Rx.com a breach of the insurance contract.  Rx.com's motion for summary judgment on this ground is denied.

Rx.com's motion for summary judgment must also be denied because Hartford has

raised a disputed fact issue based on its accord and satisfaction defense. "An accord and satisfaction occurs when parties agree to the discharge of an existing obligation in a manner other than in accordance with the terms of their original contract." *Avery v. Bank of Am.*, 72 S.W.3d 779, 788 (Tex. App. – Dallas, 2002, pet. denied) (citing *Metromarketing Serv., Inc. v. HTT Headwear, Ltd.*, 15 S.W.3d 190, 197 (Tex. App. – Houston [14th Dist.] 2000, no pet.). "In determining whether an accord and satisfaction has occurred, the question is whether there was an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation." *Id.* (internal citations and quotations omitted).

Hartford has introduced competent summary judgment evidence that Rx.com agreed to a compromised resolution over the attorney's fee dispute. Communications between Hartford's Clement and Rx.com's Meakin resulted in a proposal dated May 3, 2001, written by Meakin:

> . . . in the spirit of compromise, I believe that the following agreement is workable for both parties and in accord with [Hartford's proposed] compromise . . . :
>
> 1. The Hartford reviews all of the past Brobeck bills and pays what is owed directly to Brobeck minus the "unreasonable" expenditures within thirty days.
>
> 2. Brobeck remains on the case through the remainder of the plaintiffs' depositions and a motion for summary judgment.
>
> 3. The Hartford may offer a choice of appropriate counsel (such as the three offered so far) from which Rx.com chooses after No. 2 above based on the nature of the case that exists after No. 2 above.

(Docket Entry No. 41, Ex. 15 at HART 2781).  An email dated May 9, 2001 from  Clement

responding to Meakin's proposal states, "I received word that this proposal is acceptable to

The Hartford."  (*Id.*, Ex. 17 at RX 126).  An email from Clement to Meakin dated May 31,

2001, reads:

> Dear Mr. Meakin:
>
> I'm writing to let you know that the audit of the legal bills will not be
> completed within the 30 days as outlined in your email/letter; however, The
> Hartford will issue a partial payment check in the amount of $100,000.00 as
> a good faith effort to bring this matter to a conclusion as soon as possible (I
> will have the check payable to Brobeck, Phleger & Harrison, LLP and mailed
> to your attention).  I believe that the audit should be completed by the end of
> June, if not earlier.
>
> If you have any questions or comments, please let me know.

(*Id.*, Ex. 18 at HART 2740).  Hartford has submitted a copy of a $100,000 check payable to

Brobeck dated the same day.  (*Id.*, Ex. 19 at 1).  Brobeck cashed this check.  (*Id.* at 2).

Hartford also submitted another check in the amount of $91,639.61, dated November 5,

2001, and identified as "Outstanding Legal Fees."  (*Id.* at 3).  Brobeck cashed this check on

November 13, 2001.  (*Id.* at 4).  Rx.com concedes that Hartford paid $191,639.61 of the

amounts Brobeck billed and agrees to reduce its damages demand accordingly.  (Docket

Entry No. 49 at 7).  Rx.com does not respond to Hartford's accord and satisfaction defense

except to argue that the policy provides no audit right.  Nor does Rx.com demonstrate that

it is entitled to a summary judgment that Hartford breached an obligation to pay more than

the amount tendered and accepted.  At a minimum, there are disputed fact issues material to

determining whether Rx.com agreed to allow Hartford to pay only those Brobeck fees that Hartford determined were "reasonable" and whether Hartford satisfied this obligation.

Hartford also argues that Rx.com cannot establish breach of contract as a matter of law because it has failed to present summary judgment evidence that it paid Brobeck $603,939.97 in fees, much less that the fees were reasonable and necessary to Rx.com's defense in the underlying suit.  Hartford argues that Rx.com has not produced evidence that it ever paid Brobeck any part of the $603,919.97 that Rx.com sought, before subtracting the $191,639.61 that Rx.com now concedes that Hartford paid and subtracting the $88,981.55 that was billed for services Brobeck provided before the duty to defend was triggered. Hartford disputes that Rx.com has provided sufficient evidence of the $289,463.50 that Rx.com asserts it paid Brobeck directly.  Hartford argues that Rx.com has not shown that it has paid or is liable to pay any remaining invoiced amount and cannot seek reimbursement for amounts it has been invoiced but has not paid and will not have to pay.  Hartford also points out that the invoiced amounts include services relating to the defense of Rx.com's codefendants in the underlying lawsuit and services relating to the assertion of counterclaims, with no showing as to how they related to the services "reasonable and necessary" to defend Rx.com.  Rx.com responded by arguing that it is undisputed that it paid $289,463.50 in legal fees to its chosen counsel.  (Docket Entry No. 49 at 3).

Rx.com has submitted cancelled checks it issued to Brobeck in the amounts of $87,057.43, $26,291.18, $28,573.28, $37,594.68, $26,412.70, $50,926.36, and $20,057.10.

(Docket Entry No. 49, Ex. J).  Rx.com has not, however, presented or identified summary judgment evidence showing whether these payments went toward legal expenses that were outside the policy's coverage, as Hartford asserts.  Nor has Rx.com established that, as a matter of law, it is "legally obligated" or liable to pay all the amounts included in the Brobeck invoices.  Rx.com has not shown undisputed proof that as a matter of law it suffered $603,919.97—the total amount Brobeck billed —in damages.  As noted, Rx.com has stipulated that it is not entitled to the $191,639.61 that Hartford has already paid, and this court has already determined that Hartford is not responsible for $88,951.55 of the invoiced amount because that sum was for legal services provided before the duty to defend was triggered.  At a minimum, the record discloses fact issues relating to Hartford's defense of accord and satisfaction, whether the invoices for legal fees and expenses included defense costs for the individual defendants or for pursuing counterclaims, whether Rx.com is entitled to reimbursement for amounts invoiced that it did not pay and is not liable to pay.  Further proceedings are needed to determine whether Hartford's accord and satisfaction defense relieves it of all liability to Rx.com, and, if not, whether Hartford owes all or part of  $323,328.81 — the alleged damages remaining after subtracting the $88,951.55 billed for the pre-duty-to-defend services and the $191,639.61 that Hartford paid Brobeck in 2001.

**IV.     Hartford's Cross-Motion for Summary Judgment on the 21.55 Claims**

Hartford has moved for summary judgment on Rx.com's Texas Insurance Code Article 21.55 claims on the grounds that the claims are time-barred.  (Docket Entry No. 41 at 14).  Hartford contends that the two-year statute of limitations in Section 16(d) of Article 21.21 applies to Article 21.55 claims.  Rx.com disagrees, claiming that a four-year statute of limitations applies, making Rx.com's claims timely.[5]  (Docket Entry No. 59).  This court agrees with Rx.com that the Article 21.55 claims are timely because a four-year statute of limitations applies.

Hartford invokes a two-year statute of limitations from Article 21.21 of the Texas Insurance Code in support of its argument.  Hartford also cites three cases that purportedly support this proposition.  None of these cases is controlling.  In *Provident Life and Accident Insurance Co. v. Knott*, 128 S.W.3d 211 (Tex. 2004), the court applied Article 21.21's two-year statute of limitations to a bad-faith claim, which sounds in Article 21.21.  *Id.* at 221.  No party in the case asserted an Article 21.55 claim.  In *Wetsel v. State Farm Lloyds*, No. CIV.A.3:02-CV-0510-D, 2002 WL 1592665 (N.D. Tex. July 18, 2002), the court applied the two-year statute of limitations to bar an Article 21.55 claim, but the court specifically noted that the plaintiff in that case conceded that the two-year statute of limitations applied and that the court conducted no independent inquiry into the issue.  *Id.* at *3 & n.4.  Finally,

---

[5]     Rx.com does not dispute that it filed suit more than two years after it received notice from Hartford that Hartford would not pay Brobeck's legal bills.

in *Ozor v. CNA Insurance Co.*, No. 3:02-CV-1572AH, 2002 WL 31059790 (N.D. Tex. Sept. 13, 2002), the court assumed without deciding that an Article 21.55 claim would be governed by the two-year statute of limitations in Section 16(d) of Article 21.21. *Id.* at *2 n.2. A recent case from the Northern District of Texas similarly concludes, without analysis, that a two-year statute of limitations applies. *See Ericsson, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. Civ.A.3:05CV0816-K, 2006 WL 770424, *2 (N.D. Tex. Mar. 27, 2006) (relying on *dicta* in *Wetsel* and *Ozor* to apply a two-year statute of limitations to Article 21.55 claims).

A closer look at the two insurance code provisions provides further support for applying the four-year limitations period. "[I]t is cardinal law in Texas that a court construes a statute, 'first, by looking to the plain and common meaning of the statute's words.'" *Fitzgerald v. Advanced Spine Fixation Sys, Inc.*, 996 S.W.2d 864, 865 (Tex. 1999) (quoting *Liberty Mut. Ins. Co. v. Garrison Contractors*, 966 S.W.2d 482, 484 (Tex. 1998)). Article 21.21 governs "bad faith" insurance claims, listing specific duties and providing causes of action for oppressive and deceptive conduct and unfair trade practices in the insurance industry. *See* TEX. INS. CODE ANN. art. 21.21 §§ 1, 3, 16. Article 21.21 is a self-contained remedy and includes a specific, two-year statute of limitations:

> All actions under this Article must be commenced within two years after the date on which the unfair method of competition or unfair or deceptive act or practice occurred or within two years after the person bringing the action discovered or, in the exercise of reasonable diligence, should have discovered the occurrence of the unfair method of competition or unfair or deceptive act or practice. The period of limitation provided in this section may be extended

> for a period of 180 days if the person bringing the action proves that the failure to timely commence the action was caused by the defendant's engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action.

*Id.* at § 16(d).  The plain words of this limitations provision limit it to Article 21.21 claims, by referring only to "this Article," (Article 21.21), and by specifically referring to the causes of action stipulated in Article 21.21—"the unfair method of competition or unfair or deceptive act or practice."  Section 16(d) does not extend beyond Article 21.21.

Article 21.55, on the other hand, is a contract-based remedy for an insurer's failure to pay a claim promptly.  Article 21.55 includes a provision requiring courts to construe the law broadly.  *See* Tex. Ins. Code Ann. art. 21.55 § 8.  Article 21.55, unlike Article 21.21, includes no specific statute of limitations period.   The legislature's silence with respect to Article 21.55's limitations period is significant.  If the legislature intended to shorten the limitations period, as it did with respect to Article 21.21, it could have done so.  Instead, the legislature added a provision mandating that Article 21.55 be construed liberally.   "In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the: (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute; and (7) title (caption), preamble, and emergency provision."  Texas Gov. Code Ann. § 311.023.  Seemingly inconsistent statutory provisions should be reconciled to the extent possible.  *Id.* at §

311.025.  Incorporating Article 21.21's shortened limitations period would be inconsistent with the absence of a specific limitations period and with the Texas legislature's stated intent that Article 21.25 be broadly construed.  The default four-year statute of limitations for contract claims should apply.  *See* TEX. CIV. PRAC. & REM. CODE § 16.004.  Hartford's cross-motion for summary judgment on the Section 21.55 claims is denied.

## V.      Hartford's Motion for Leave To Amend

Hartford has filed a motion for leave to amend its complaint.  (Docket Entry No. 42).  Rx.com's primary opposition is that even as amended, the claims fail, making the amendments futile.  Rule 15 of the Federal Rules of Civil Procedure requires leave of the court for a party to file an amended pleading and provides that such leave "shall be freely given when justice so requires."   In deciding whether to grant leave to file an amended pleading, a district court may consider factors such as undue delay; bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party; and futility of amendment.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).  Leave to amend under Rule 15(a) "shall be freely given when justice so requires."  However, leave to amend "is by no means automatic."  *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992); *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981); *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979).  The decision "lies within the sound discretion of the district court."  *Little*,

952 F.2d 841, 846.

Because this court has denied Rx.com's motion for summary judgment, Hartford's motion for leave to amend is granted.  Rx.com does not assert any ground besides futility to deny leave to amend; Rx.com has not shown that the proposed amended pleading is the product of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or would unduly prejudice the opposing party.

**VI.    Conclusion**

The motions for summary judgment are denied.  The motions for leave to file supplemental responses and evidence are granted.  The motion for leave to file an amended answer is granted.  The motions to strike are granted in part and denied in part.  This court will hold a status conference on **April 14, 2005, at 4:00 p.m.** to address the outstanding discovery disputes and to enter  a scheduling order.

SIGNED on March 29, 2006, at Houston, Texas.

Lee H. Rosenthal
United States District Judge